*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PIONEER STATE MUTUAL INSURANCE
COMPANY,

        Plaintiff-Appellee,

v

TYLER G. MCCALLISTER,

        Defendant-Appellant,

NATIONWIDE MUTUAL FIRE & INSURANCE
COMPANY,

        Defendant-Appellee,

and

LAWRENCE J. BENTON, Personal Representative
of the ESTATE OF DONALD RICHARD
MATTHIAS, WANDA MATTHIAS, ROBERT S.
HOLLANDER, Personal Representative of the
ESTATE OF TYLER MICHAEL CARON, and
MICKENZIE WILSON,

        Defendants.

UNPUBLISHED
September 29, 2022

No. 359077
Lapeer Circuit Court
LC No. 20-053540-CK

Before: CAVANAGH, P.J., and GARRETT and YATES, JJ.

PER CURIAM.

Defendant Tyler McCallister appeals as of right the trial court's order granting summary disposition in favor of plaintiff, Pioneer State Mutual Insurance Company. This case involves a declaratory-judgment action, in which Pioneer seeks to rescind a no-fault insurance policy issued

to Donald Matthias[1] and defendant Wanda Matthias (collectively, "the insureds"), to avoid the payment of benefits to McCallister, an innocent third party. On appeal, McCallister argues that the trial court erred by granting Pioneer's motion for summary disposition and rescinding the insurance policy with respect to his claims. For the reasons discussed in this opinion, we reverse and remand for further proceedings.

## I. BACKGROUND

This case arises from a motor vehicle accident in which Tyler Caron was driving a vehicle owned by the insureds (his grandparents) and covered under a no-fault policy issued by Pioneer. McCallister and defendant Mickenzie Wilson were passengers in the vehicle. Caron, McCallister, and Wilson had consumed alcohol, cocaine, and marijuana throughout the night of the accident. Caron was driving the group to their next location when police officers tried to pull Caron's vehicle over. Caron fled at a high rate of speed and crashed into several trees; Caron died in the accident, and McCallister and Wilson were severely injured.

After Pioneer investigated the matter, the company informed Wanda that it was rescinding the insurance policy on the vehicle. The rescission letter cited three reasons: (1) an ineligible person (Wanda's daughter) lived in the home of the insureds when they first applied for a policy and for several years afterward, (2) Caron was not disclosed as a driver of the vehicle in the accident, and (3) this vehicle was not being garaged at the insured address. Wanda and Donald's estate accepted and deposited a check from Pioneer refunding their premiums.

Later, McCallister filed for no-fault personal protection insurance (PIP) benefits with the Michigan Assigned Claims Plan (MACP), which assigned defendant Nationwide Mutual Fire & Insurance Company as the carrier. After both Nationwide and McCallister filed lawsuits, Pioneer filed this declaratory-judgment action seeking a declaration that its policy was rescinded. Pioneer moved for summary disposition against all defendants and the trial court granted its motions. The trial court rescinded Pioneer's policy as to McCallister after a balancing of the equities. This appeal followed.

## II. ANALYSIS

McCallister argues that the trial court erred by granting summary disposition in favor of Pioneer and rescinding the policy.

## A. STANDARDS OF REVIEW

We review de novo a trial court's decision to grant summary disposition. *Pioneer State Mut Ins Co v Wright*, 331 Mich App 396, 404; 952 NW2d 586 (2020).

> When considering a motion brought pursuant to MCR 2.116(C)(10), the trial court must review the evidence in the light most favorable to the nonmoving party. Summary disposition is only appropriate when there is no genuine issue of material

---

[1] Donald passed away after the accident in this case, and his estate was named as a defendant.

fact. A genuine issue of material fact exists when the record presents an issue upon which reasonable minds might differ. [*Id*. at 405 (citations omitted).]

"Rescission is equitable in nature, and therefore, the remedy is granted only within the trial court's discretion." *Id*. at 410. A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. "The trial court's factual findings are reviewed for clear error, and a finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id*. at 406.

## B. WAIVER

McCallister first argues that Pioneer has waived any claim of rescission because it announced a cancellation of the insurance policy before attempting to rescind the policy. McCallister's claim of waiver was not raised in the trial court and is therefore itself waived. See *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008) (explaining that Michigan courts generally follow the "raise or waive" rule of appellate preservation in civil cases).

Even if we exercised our inherent authority to review the issue, we would conclude that the claim of waiver lacks merit. McCallister relies on *Burton v Wolverine Mut Ins Co*, 213 Mich App 514, 517; 540 NW2d 480 (1995), in which this Court concluded that the insurer waived its right of rescission when, after discovering a material misrepresentation in the application, it chose to issue a notice of cancellation, which was effective on a future date. This Court concluded that the insurer's actions induced the insureds to believe that they would have insurance coverage until the effective date of the cancellation. *Id*. at 518. McCallister failed to establish that a cancellation occurred in this case. Unlike in *Burton*, there is no evidence that a notice of cancellation was sent to the insureds. Rather, McCallister relies on Wanda's testimony that the insurance agent told her that her policy had been cancelled. But there is no evidence that either Wanda, or the agent, was using the term "cancel" in the legal sense of the term. Bill Comstock, a claims manager for Pioneer, also denied that a cancellation had occurred and testified that the policy was rescinded. Pioneer submitted as evidence the check refunding the insureds' premiums, which the insureds cashed. Accordingly, McCallister's claim of waiver lacks merit because there is no genuine issue of material fact that the policy was rescinded and not cancelled.

## C. FRAUD

Next, McCallister argues that Pioneer failed to establish by clear and convincing evidence that the policy was procured by fraud.

"Michigan's contract law recognizes several interrelated but distinct common-law doctrines—loosely aggregated under the rubric of 'fraud'—that may entitle a party to a legal or equitable remedy if a contract is obtained as a result of fraud or misrepresentation." *Titan Ins Co v Hyten*, 491 Mich 547, 555; 817 NW2d 562 (2012). An insurer may seek rescission of the contract for "fraud related to the inducement to or inception of the contract." *Meemic Ins Co v Fortson*, 506 Mich 287, 305; 954 NW2d 115 (2020). "Rescission abrogates a contract and restores the parties to the relative positions that they would have occupied if the contract had never been made." *Bazzi v Sentinel Ins Co*, 502 Mich 390, 409; 919 NW2d 20 (2018).

In *Univ of Mich Regents v Mich Auto Ins Placement Facility*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 354808); slip op at 5, this Court held that "trial courts are required to balance the equities between a defrauded insurer and an innocent third party before extending the mutual rescission of a no-fault insurance policy to an innocent third party." Mutual rescission between the insurer and the insured, unlike the equitable remedy of rescission granted in the sound discretion of a trial court, may be accomplished "by return and acceptance of the premium." *Id*. at 4. See also *Meemic*, 506 Mich at 310 n 19 (explaining the limited distinctions between the equitable and legal remedy of rescission).

In this case, Pioneer refunded the insureds' premiums and the insureds accepted and cashed the check from Pioneer. Thus, a mutual rescission occurred that restored Pioneer and the insureds to the status quo that existed before the insurance contract was formed. See *Puffer v State Mut Rodded Fire Ins Co*, 259 Mich 698, 702; 244 NW 206 (1932) ("The failure of the parties to make a verbal agreement of settlement, separate from the indorsement on the check, is not of consequence."). After finding a mutual rescission, the trial court did not address or decide whether fraud occurred, nor was it required to do so to rescind the policy as to McCallister. Therefore, we need not consider whether the policy was properly rescinded as to the insureds because of fraud.

## D. BALANCING OF THE EQUITIES

Finally, McCallister argues that rescission of the no-fault policy was improper as to him because he is an innocent third party and, when balancing the equities, the relevant factors weigh against rescission. Although McCallister did not specifically address each of the balancing-of-the-equities factors before the trial court, he generally argued that a balancing of the equities did not support rescission. Because a party may make a more developed argument on appeal, this issue is preserved for our review. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 228; 964 NW2d 809 (2020).

Our Supreme Court has set forth these principles underlying the equitable remedy of rescission:

> When a plaintiff is seeking rescission, the trial court must balance the equities to determine whether the plaintiff is entitled to the relief he or she seeks. Accordingly, courts are not required to grant rescission in all cases. For example, rescission should not be granted in cases where the result thus obtained would be unjust or inequitable, or where the circumstances of the challenged transaction make rescission infeasible. *Moreover, when two equally innocent parties are affected, the court is required, in the exercise of [its] equitable powers, to determine which blameless party should assume the loss* . . . . [W]here one of two innocent parties must suffer by the wrongful act . . . of another, that one must suffer the loss through whose act or neglect such third party was enabled to commit the wrong. The doctrine is an equitable one, and extends no further than is necessary to protect the innocent party in whose favor it is invoked. [*Bazzi*, 502 Mich at 410-411 (emphasis added; quotation marks and citations omitted; alterations in original).]

-4-

And as stated above, "trial courts are required to balance the equities between a defrauded insurer[2] and an innocent third party before extending the mutual rescission of a no-fault insurance policy to an innocent third party." *Univ of Mich Regents*, ___ Mich App at ___; slip op at 5.

To help trial courts exercise their equitable discretion in innocent-third-party cases, Justice MARKMAN outlined a "nonexclusive list of factors" trial courts should consider when ruling on rescission. *Farm Bureau Gen Ins Co of Mich v ACE American Ins Co*, 503 Mich 903, 906-907; 919 NW2d 394 (2018) (MARKMAN, J., concurring). We subsequently adopted the factors discussed in Justice MARKMAN's concurrence, concluding that they "present[] a workable framework as well as necessary guidance to the lower courts and the litigants." *Wright*, 331 Mich App at 411. Consequently, trial courts should consider the factors below when resolving the issue of rescission as applied to an innocent third party:

> (1) the extent to which the insurer could have uncovered the subject matter of the fraud before the innocent third party was injured; (2) the relationship between the fraudulent insured and the innocent third party to determine if the third party had some knowledge of the fraud; (3) the nature of the innocent third party's conduct, whether reckless or negligent, in the injury-causing event; (4) the availability of an alternate avenue for recovery if the insurance policy is not enforced; and (5) a determination of whether policy enforcement only serves to relieve the fraudulent insured of what would otherwise be the fraudulent insured's personal liability to the innocent third party. [*Id.*]

"Balancing the equities is not concerned with assigning blame but, rather, with determining which of the innocent parties should bear a loss." *Id.* at 414.

The trial court found that the first factor—the extent to which Pioneer could have uncovered the insureds' alleged misrepresentations before McCallister was injured—favored rescission because Pioneer had no reason to question the truthfulness of the insureds' representations. In *Wright*, 331 Mich App at 412, however, this Court found that the first factor did not weigh in favor of either party when no evidence suggested that there could have been a more diligent effort on the part of the insurer to discover alleged misrepresentations. Here, there is similarly no evidence that Pioneer could have done more to discover the alleged misrepresentations about who was living at the policy address or driving the vehicle at issue. "[A]n insurer has no duty to investigate or verify the representations of a potential insured," *Titan Ins Co*, 491 Mich at 570, and Comstock testified that it was the obligation of the insureds under the policy to report any changes after the initial application. As for the garage change, the evidence suggests that Pioneer was informed of the contradiction, but did not make any further inquiry. A change request made in 2015 indicates that "[g]araged location has been removed" for the vehicle involved in the accident. This notation suggests that the insureds disclosed a change in the garaging location and that Pioneer knew about the disclosure. Although the first factor "does not impose a duty to investigate upon insurers," it does consider "any information disclosed" by the insured in the procurement of insurance. *Wright*, 331 Mich App at 412 n 6. Accordingly, this

---

[2] As previously discussed, we draw no conclusion about whether Pioneer was *actually* defrauded by the insureds.

factor is either neutral or weighs slightly against rescission. The trial court erred by finding that it supported rescission.

The trial court found that the second factor—whether McCallister had knowledge of the fraud—weighed against rescission because there was no evidence that McCallister knew that the insureds made a misrepresentation. Pioneer agrees and concedes that this factor weighs against rescission. See *Wright*, 331 Mich App at 412 ("The second factor, the innocent third party's potential knowledge of the fraud, weighs against rescission because there is no evidence that [the innocent third party] was ever aware of [the insured's] representations."). Therefore, the trial court did not err by finding that this factor weighed against rescission.

The trial court found that the third factor—the nature of McCallister's conduct, whether reckless or negligent, in the injury-causing event—was neutral. The court explained that while McCallister and Wilson "did nothing directly to cause the crash that resulted in their injuries, they should have been aware that they were exposing themselves to a heightened risk of harm as a result of voluntarily riding in a vehicle operated by a person they knew or should have known was consuming alcohol, marijuana, and cocaine in their presence." In *Wright*, 331 Mich App at 412, this Court found that the third factor weighed against rescission because the innocent third party was merely a passenger and was not involved in the operation of the vehicle. Similarly, McCallister was a passenger in Caron's vehicle and was not involved in its operation. Even if McCallister were negligent by riding in the vehicle with knowledge that Caron was intoxicated or under the influence of drugs, McCallister's negligence did not contribute to the accident. The "injury-causing event" was Caron's decision to speed away from pursuing police officers while possibly intoxicated. And McCallister testified that after Caron failed to pull over, he told Caron to stop the vehicle multiple times. Because McCallister's conduct did not contribute to the accident, this factor weighs against rescission, and the trial court erred by finding that this factor was neutral.

The trial court found that the fourth factor—the availability of an alternative avenue for recovery if the insurance policy is not enforced—favored rescission because McCallister would continue to receive PIP benefits from Nationwide and might recover some portion of his third-party claim from the estates. The availability of another source of PIP benefits, from Nationwide in this case, weighs in favor of rescission. See *Wright*, 331 Mich App at 414. See also *Farm Bureau*, 503 Mich at 906 (MARKMAN, J., concurring) (stating that an alternative avenue for recovery may include the assigned claims plan). McCallister argues, however, that neither estate has sufficient assets to pay third-party tort damages and thus the trial court erred by finding that this was an alternative source of recovery. The trial court acknowledged that the estates may be insolvent, but still found that this factor supported rescission. Importantly, in *Wright*, 331 Mich App at 413, this Court noted that "the fourth factor considers the present situation." The trial court noted the possibility that the estates might be insolvent, but there was no evidence presented that they were, in fact, insolvent. At any rate, recovery from Nationwide remains an available alternative option. Because there are alternative sources of recovery available to McCallister, the trial court did not err by finding that this factor weighed in favor of rescission.

Finally, the trial court found that the fifth factor—a determination of whether policy enforcement only relieves the fraudulent insured of what would otherwise be the fraudulent insured's personal liability to the innocent third party—weighed somewhat in favor of rescission

because enforcing the insurance policy would not primarily shift liability from the fraudulent insured to the innocent insurance company, but some tort liability might shift to Pioneer. In *Wright*, 331 Mich App at 414, this Court found that this factor was not applicable when the "fraudulent insured" was not involved in the accident. See also *Farm Bureau Gen Ins Co of Mich v ACE American Ins Co*, 337 Mich App 88, 107; 972 NW2d 325 (2021). Similarly, this factor is not applicable in this case because the alleged wrongdoers are the insureds, who were not involved in the accident. Therefore, the trial court erred by finding that this factor supported rescission.[3]

The trial court erred in several of its findings. In total, two factors weigh against rescission, one factor is neutral (or slightly weighs against rescission), one factor weighs in favor of rescission, and one factor does not apply. Still, "the factors are not to be merely counted up, and the ultimate issue is which innocent party should bear the loss." *Farm Bureau*, 337 Mich App at 108. Properly weighing the factors, we conclude that extending the mutual rescission to McCallister would be inequitable. Under the circumstances of this case, where the only consideration supporting rescission is the availability of recovery through the MACP, and where McCallister did not know about the alleged fraud and did not contribute to the injury-causing event, McCallister should not bear the loss. Accordingly, the trial court abused its discretion by granting rescission as to McCallister and erred by granting summary disposition in favor of Pioneer on its claim against McCallister.

We reverse and remand for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Kristina Robinson Garrett
/s/ Christopher P. Yates

---

[3] Although the list in *Wright*, 331 Mich App at 411, is nonexclusive, the parties have not identified, and the trial court did not discuss, any other factors that should be considered in this case.